KELLY M. KLAUS (CA Bar No. 161091)
kelly.klaus@mto.com
ELIZABETH A. KIM (CA Bar No. 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

MICHAEL B. DESANCTIS (*pro hac vice* pending)
michael.desanctis@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Telephone:   (202) 220-1100
Facsimile:    (202) 220-2300

KAREN R. THORLAND (CA Bar No. 172092)
karen_thorland@mpaa.org
MOTION PICTURE ASSOCIATION OF AMERICA, INC.
15301 Ventura Blvd., Building E
Sherman Oaks, California 91403
Telephone: (818) 935-5812

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Netflix Studios, LLC; Amazon Content Services, LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; Universal City Studios Productions LLLP; Warner Bros. Entertainment Inc. | Case No. |
| Plaintiffs, | **COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| Dragon Media Inc. d/b/a Dragon Box; Paul Christoforo; Jeff Williams. | |
| Defendants. | |

1       Plaintiffs Netflix Studios, LLC ("Netflix"), Amazon Content Services, LLC

2  ("Amazon"), Columbia Pictures Industries, Inc. ("Columbia"), Disney Enterprises,

3  Inc. ("Disney"), Paramount Pictures Corporation ("Paramount"), Twentieth Century

4  Fox Film Corporation ("Fox"), Universal City Studios Productions LLLP

5  ("Universal"), and Warner Bros. Entertainment Inc. ("Warner Bros.") (collectively,

6  "Plaintiffs") bring this Complaint against Dragon Media Inc. d/b/a Dragon Box,

7  Paul Christoforo, and Jeff Williams (Christoforo and Williams are referred to

8  collectively as the  "Individual Defendants," and the Individual Defendants and

9  Dragon Media Inc. are referred to collectively as "Defendants") under the Copyright

10  Act (17 U.S.C. § 101 et seq.).  This Court has subject matter jurisdiction pursuant to

11  28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).  Plaintiffs allege, on personal

12  knowledge as to themselves and information and belief as to others, as follows:

**INTRODUCTION**

14     1.    Defendants market and sell "Dragon Box," a computer hardware device

15  that Defendants urge their customers to use as a tool for the mass infringement of

16  the copyrighted motion pictures and television shows Plaintiffs own or have the

17  exclusive right(s) to reproduce, distribute, and/or publicly perform ("Copyrighted

18  Works").  Defendants tell customers to "Watch your Favourites Anytime For

19  FREE," "Watch virtually every movie, Most in High Definition, TV Shows and

20  Sports … and much more."  And Defendants promote the device as the means to

21  "cut your cable & save money," and encourage customers to "Get rid of your

22  Premium Channels… [and] Stop paying for Netflix and Hulu."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20       2.     Defendants sell illegal access to Plaintiffs' Copyrighted Works.  It

21 works like this:  Defendants distribute and promote the Dragon Box device, the

22 black box displayed in the bottom left-hand side of Defendants' ad shown above.

23 Dragon Box uses software to link its customers to infringing content on the Internet.

24 When used as Defendants intend and instruct, Dragon Box gives Defendants'

25 customers access to multiple sources that stream Plaintiffs' Copyrighted Works

26 without authorization.  These streams are illegal public performances of Plaintiffs'

27 Copyrighted Works.

28

3.      For the customers who use Dragon Box, the device provides the hallmarks of using authorized streaming services—a user-friendly interface and reliable access to popular content—with one notable exception: the customers only pay money to Defendants, not to Plaintiffs and other content creators upon whose copyrighted works Defendants' business depends. Plaintiffs bring this action to stop Defendants' intentional inducement of, and knowing and material contribution to, the widespread infringement of Plaintiffs' rights.

**THE PARTIES**

4.      Plaintiff Netflix Studios, LLC is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Gatos, California. Netflix owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

5.      Plaintiff Amazon Content Services, LLC is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Seattle, Washington. Amazon owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

6.      Plaintiff Columbia Pictures Industries, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California. Columbia owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

7.      Plaintiff Disney Enterprises, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Disney owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

8.      Plaintiff Paramount Pictures Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Paramount owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

9.      Plaintiff Twentieth Century Fox Film Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Fox owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

10.     Plaintiff Universal City Studios Productions LLLP is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  Universal owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

11.     Plaintiff Warner Bros. Entertainment Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Warner Bros. owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

12.     Plaintiffs have obtained Certificates of Copyright Registration for their Copyrighted Works.  Exhibit A contains a representative list of titles, along with their registration numbers, of which Defendants have contributed to and induced infringement and continue to contribute to and induce infringement.

13.     Defendant Dragon Media Inc. is a corporation duly incorporated under the laws of the State of California with its principal place of business at 2740 Circulo Santiago, Carlsbad, CA 92008.  Defendant Dragon Media Inc. does business under the name Dragon Box and operates an interactive website available at https://www.thedragonbox.com.

14.     Defendant Paul Christoforo is the president, owner, and operator of Dragon Media Inc.  Christoforo is a resident of Carlsbad, California.

15.     Defendant Jeff Williams is an official reseller and authorized distributor of Dragon Box devices and an affiliate of Dragon Media Inc.  Williams is a resident of Larkspur, California.  Williams operates an interactive website known as "West Coast Dragon Box, available at http://www.westcoastdragonbox.com.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## FACTUAL OVERVIEW

**Plaintiffs and Their Copyrighted Works**

18.     Plaintiffs or their affiliates produce and distribute some of the most popular and critically acclaimed motion pictures and television shows in the world.

19.     Plaintiffs or their affiliates have invested (and continue to invest) substantial resources and effort each year to develop, produce, distribute, and publicly perform their Copyrighted Works.

20.     Plaintiffs or their affiliates own or have the exclusive U.S. rights (among others) to reproduce, distribute, and publicly perform Plaintiffs' Copyrighted Works, including by means of streaming those works over the Internet to the public.

21.     Plaintiffs authorize the distribution and public performance of their Copyrighted Works in various formats and through multiple distribution channels, including, by way of example: (a) for exhibition in theaters; (b) through cable and direct-to-home satellite services (including basic, premium, and "pay-per-view"); (c) through authorized, licensed Internet video-on-demand services, including those operated by iTunes, Google Play, Hulu, VUDU, Netflix, Inc. and Amazon.com, Inc.; (d) for private home viewing on DVDs and Blu-ray discs; and (e) for broadcast on television.

22.     Plaintiffs have not authorized Defendants, the operators of the third-party sites to which Dragon Box links, or Defendants' customers, to exercise any of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. § 106.

**Defendants' Inducement of and Contribution to the Infringement of Plaintiffs' Copyrighted Works**

### The Dragon Box Experience

23.     As advertised, Dragon Box is easy for customers to install and operate. Customers need only connect Dragon Box to the Internet and a screen (e.g., computer monitor or television) to operate.  Defendants' marketing materials describe the "QUICK & EASY INSTALL!" and explain to customers that "all you need is an Internet connection and HDTV":



24.     Defendants market Dragon Box as a device that gives their customers direct access to "Free pay per view. Free movies still in theaters in HD and 3D. Sports Packages, [and] Kids content."  Defendants boast that "All content is free"[1] for Dragon Box customers.

---

[1] The Dragon Box (April 9, 2014), https://www.facebook.com/TheDragonBox/photos/a.443840675745196.107374182 8.440184166110847/491300964332500/?type=3&theater.

25.     The Dragon Box device primarily utilizes two types of software programs.  The first is a software media player called "Kodi."  Kodi is a third-party "open source" media player, meaning that it operates with many different programs and file formats.  Kodi is recognized as the most popular media player for supporting the second type of software program Dragon Box relies on: "addons." An addon is a software program that runs in conjunction with an underlying software program (like Kodi) to provide functionality over and above the functionality that the underlying software provides.

26.     The Dragon Box device allows Defendants' customers to access "unlimited" "free" content through the use of the "Dragon Media" software application.  The Dragon Media application provides Defendants' customers with a customized configuration of the Kodi media player and a curated selection of the most popular addons for accessing infringing content.  These addons are designed and maintained for the overarching purpose of scouring the Internet for illegal sources of copyrighted content and returning links to that content.  When Dragon Box customers click those links, those customers receive unauthorized streams of popular motion pictures and television shows.

27.     From the customer's perspective, Dragon Box works as follows.  First, the customer boots up a newly delivered Dragon Box unit.  As depicted below, Dragon Box presents the customer with a menu that includes the "DRAGON MEDIA" software application:



When a customer selects "DRAGON MEDIA" for the first time, the device prompts the customer to download the "DragonBox" software.  After clicking through the guided "Media Setup," the device downloads and installs the latest version of Dragon Media:

28.     Once the Dragon Media software application has been downloaded and installed onto the Dragon Box device, the customer is presented a multi-page home screen that presents the customer with categories to select.  These categories include "Sports," "4Kids," "Videos," "IPTV," and "TV Shows," among others.  The screenshot below shows the "4Kids" portion of this multi-page home screen.  The buttons below the "4Kids" title are links to popular addons for accessing infringing content for children, including "WatchCartonsOnline," "Tykes," and "Nemesis Kids," among others:



29.     In total, Defendants provide customers with over 80 addons as part of their suite of Dragon Media addons to access all of the "Unlimited Shows, Movies, [and] Live Sporting events."

30.     Defendants' customers use Dragon Box for intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized streams of Plaintiffs' Copyrighted Works.

31.     Covenant is a very popular addon for accessing infringing content.  It is one of the suite of addons that Dragon Box includes with the download and installation of the Dragon Media software application.  As depicted in the screenshot below (in the red circle), the Dragon Media software application features Covenant with a preinstalled shortcut on the main Dragon Box menu for "Videos":



32.     The customer opens Covenant by clicking the shortcut button on the Dragon Box home menu.  Once opened, the customer sees the following welcome screen, which features 15 different categories and search options.  These curated categories include selections of obviously popular and copyrighted content, such as "Box Office," "In Theaters," and "New Movies":



33.     A Dragon Box customer who selected the "In Theaters" category on December 19, 2017, would have viewed 51 curated results (as circled), the first page of which is depicted below:



34.     Disney's *Coco*, one of the titles returned by selecting the "In Theaters" category, was released to theaters on November 22, 2017.  As of December 19, 2017, *Coco* was not authorized for in-home viewing via video-on-demand distribution, as its distribution was still limited exclusively to theaters.  As of December 19, 2017, several other of the above-listed titles were also not authorized for video-on-demand distribution, as they were still being distributed exclusively to theaters.

35.     Once the customer selects a particular title to stream, he or she has access to dozens of links to sources of unauthorized content.  For example, the screenshot below shows the 100 results for *Coco*:



As the result of just one search, the customer would have had access to at least 100 different unauthorized sources for streaming *Coco*, less than a month after the title's release to theaters.

36.     The customer also has access to information about the sources of the unauthorized content, including whether the source streams content in high-

definition or standard-definition resolution.  As depicted above, certain sources indicate that they are "720P," a high-definition resolution.

37.    As depicted in the screenshot below, when the customer selects a source for *Coco*, Dragon Box presents a user-friendly interface with buttons to fast-forward, rewind, play, pause, stop, and turn on closed-captioning, among others. With just a few clicks, the customer can access an infringing stream of a motion picture that can be seen legally only in theatres:



1

2

**_Defendants Intentionally Induce Mass Infringement of Plaintiffs'_**
**_Copyrighted Works_**

3

4

38.    Defendants promote the use of Dragon Box for overwhelmingly, if not exclusively, infringing purposes, and that is how their customers use Dragon Box.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

39.    Defendants advertise Dragon Box as a substitute for authorized and legitimate distribution channels such as cable television or video-on-demand services like Amazon Prime and Netflix.  Defendants blatantly tell prospective customers to "Get rid of your Premium Channels… [and] Stop paying for Netflix and Hulu,"[2] because Dragon Box offers customers the ability to stream "<u>ANY</u> TV SHOW, MOVIE, SPORTING EVENT …. AND NOT HAVE A MONTHLY BILL."[3] Defendants actively target authorized distribution channels like Netflix and encourage customers to "[s]top paying a monthly subscription and stream whatever you want, [when]ever you want."  Defendants market Dragon Box as a way to "cut the cord and start saving $$$!!!!" "Watch the shows you want! When you want!" and do so with "NO CONTRACTS" "NO MONTHLY BILLS" and "NO COMMERCIALS." Defendants inform potential customers that once they purchase Dragon Box, all of the content they stream is "All for FREE" and customers can "get setup in less than five minutes."

19

20

21

22

23

24

25

26

27

28

---

[2] The Dragon Box (Sept. 27, 2014),
https://www.facebook.com/TheDragonBox/photos/a.443840675745196.1073741828.440184166110847/585014294961166/?type=3&theater

[3] The Dragon Box (Sept. 18, 2014),
https://www.facebook.com/TheDragonBox/photos/a.443840675745196.1073741828.440184166110847/579048178891111/?type=3&theater

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



40.    Defendants urge Dragon Box customers to stream infringing content. Defendants' promotional materials inform customers that "[y]ou get Free pay per view. Free movies still in theaters in HD and 3D. Sports Packages, Kids content & All content is free."  Defendants tell Dragon Box customers that they can "Watch What You Want When You Want With Dragon Box and Save $$" and access "Free Movies (In Theater)" "Free TV Shows commercial free from season one" and "so much more content":



41.    Defendant Williams tells customers on his West Coast Dragon Box website that customers can "WATCH MOVIES AT HOME THAT ARE STILL IN THEATRES!" and that the "movie selection is unlimited, if you're looking for a classic or even movies currently in the theater!"[4]  Williams promises "FREE ACCESS TO MOVIES, TV SHOWS, LIVE SPORTS … AND MORE."[5]

42.    Defendants also use their Facebook pages to announce software updates and advertise the availability of infringing content that is not yet available outside of theaters.  For example, Defendant Christoforo, on the Dragon Box

---

[4] West Coast Dragon Box, http://www.westcoastdragonbox.com (last visited Jan. 9, 2018).

[5] *Id.*

Facebook page, announced to Dragon Box customers on June 8, 2016 that Universal's *Warcraft* was available to stream, though it was "Not Even in Theaters Yet!!!"  In that same post, Christoforo boasted that "Dragon Box [is] always bringing you the latest and greatest blockbusters."[6]  *Warcraft* was not released to theaters until June 10, 2016, and not authorized for on-demand streaming until September 13, 2016.

43.     Defendants promote Dragon Media Inc.'s regular updates to the Dragon Media software application.  These updates include changes to the addons that the Dragon Media application features.  Dragon Media Inc. frequently adds the most popular and up-to-date addons to the Dragon Media application and makes custom "tweaks" to ensure that Dragon Box customers will enjoy uninterrupted access to the most popular and up-to-date addons to obtain access to infringing streams any time.  As Defendant Christoforo explained on the Dragon Box Facebook page: "Our programmers are top notch when it comes to KODI and Firmware and the Dragon Box."[7]  Defendant Dragon Media Inc. regularly releases updates and "tweaks," and released one such update, for example, on October 17, 2017.[8]

44.     Dragon Media Inc. also provides Dragon Box customers with access to "premium" addons.  For example, Dragon Media Inc. issues every Dragon Box customer a user login and password to access "Area-51 IPTV."  Using the Area-51

---

[6] The Dragon Box (June 8, 2016), https://www.facebook.com/TheDragonBox/photos/a.443840675745196.107374182 8.440184166110847/894715507324375/?type=3&theater.

[7] The Dragon Box (July 19, 2015), https://www.facebook.com/TheDragonBox/posts/732750850187509.

[8] The Dragon Box (October 17, 2017), https://www.facebook.com/TheDragonBox/posts/1338310729631515.

IPTV addon, Dragon Box customers can stream live television channels, including premium cable television networks and sports networks.

45.     The commercial value of Defendants' Dragon Box business depends on high-volume use of unauthorized content through the Dragon Box devices. Defendants promise their customers reliable and convenient access to all the content they can stream and customers purchase Dragon Box devices based on Defendants' apparent success in delivering infringing content to their customers.  Dragon Media Inc. and Christoforo solicit individuals like Williams to serve as authorized distributors and resellers of Dragon Box devices by highlighting the increasing popularity of Dragon Box devices and millions of dollars in sales.

46.     As recently as December 30, 2017, Christoforo exclaimed "New Dragon Box Resellers Wanted NOW!" explaining that Dragon Box has "over 250,000 customers in 50 states and 4 countries and growing" and has "374 sellers across the world."[9]  Christoforo explains that Dragon Box will "handle all of the marketing materials … do all of the training and personal mentoring as well as the tech support, warranty, customer service, and keeping the product up to date with the latest firmware and software."[10]

47.     Defendants' revenues grow based on increase in demand for the Dragon Box devices.  The demand for Dragon Box is driven by Defendants' promise of free access to infringing content.  These promises depend on and form an integral part of an ecosystem built on the mass infringement of Plaintiffs' Copyrighted Works.

---

[9] The Dragon Box (Dec. 30, 2017), https://www.facebook.com/TheDragonBox/posts/1404082249721029.
[10] Id.

# FIRST CAUSE OF ACTION

## (Intentionally Inducing the Infringement of Plaintiffs' Copyrighted Works, 17 U.S.C. § 106)

48.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 47 inclusive.

49.     Defendants have actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

50.     Defendants intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their Copyrighted Works.  As intended and encouraged by Defendants, the Dragon Box device connects customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Dragon Box customers.  These operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when Dragon Box customers click on a link for the content.

51.     Defendants induce the aforementioned acts of infringement by supplying the physical devices that facilitate, enable, and create direct links between Dragon Box customers and the infringing operators of the streaming services, and by actively inducing, encouraging and promoting the use of their devices for blatant copyright infringement.

52.     Defendants' intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

53.     Defendants' inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

54.     As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

55.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of Defendants' willful inducement of infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

56.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

57.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to induce infringement of Plaintiffs' rights in their Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

**(Contributory Copyright Infringement by Knowingly and Materially Contributing to the Infringement of Plaintiffs' Copyrighted Works, 17 U.S.C. § 106)**

58.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 47 inclusive.

59.     Defendants have actual or constructive knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.  Defendants knowingly and materially contribute to such infringing activity.

60.     Defendants knowingly and materially contribute to the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their works.  Defendants design and promote the use of the Dragon Box device to connect customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Dragon Box customers.  The operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when Dragon Box customers click on a link for the content.

61.     Defendants knowingly and materially contribute to the aforementioned acts of infringement by supplying the physical devices that facilitate, encourage, enable, and create direct links between Dragon Box customers and infringing operators of the streaming services, and by actively encouraging, promoting, and contributing to the use of their devices for blatant copyright infringement.

62.     Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

63.     Defendants' knowing and material contribution to the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

64.     As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

65.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of

1  Defendants' willful, knowing, and material contribution to infringement, or for such

2  other amounts as may be proper under 17 U.S.C. § 504.

3      66.    Plaintiffs further are entitled to recover their attorneys' fees and full

4  costs pursuant to 17 U.S.C. § 505.

5      67.    As a direct and proximate result of the foregoing acts and conduct,

6  Plaintiffs have sustained and will continue to sustain substantial, immediate and

7  irreparable injury, for which there is no adequate remedy at law.  Unless enjoined

8  and restrained by this Court, Defendants will continue to knowingly and materially

9  contribute to the infringement of Plaintiffs' rights in their Copyrighted Works.

10  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

11                                  **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiffs pray for judgment against Defendants and for the

13  following relief:

14      1.    For Plaintiffs' damages and Defendants' profits in such amount as may

15  be found; alternatively, at Plaintiffs' election, for maximum statutory damages; or

16  for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

17      2.    For preliminary and permanent injunctions (a) enjoining Dragon Media

18  Inc., the Individual Defendants, and their officers, agents, servants, employees,

19  attorneys, and all persons acting in active concert or participation with them, from

20  publicly performing or otherwise infringing in any manner (including without

21  limitation by materially contributing to or intentionally inducing the infringement

22  of) any right under copyright in any of Plaintiffs' Copyrighted Works, including

23  without limitation by publicly performing those works, or by distributing any

24  software or providing any service or device that does or facilitates any of the

25  foregoing acts; and (b) impounding all Dragon Box devices in Defendants'

26  possession, custody, or control, and any and all documents or other records in

27  Defendants' possession, custody, or control relating to Defendants' contribution to

28  and inducement of the infringement of Plaintiffs' Copyrighted Works.

3.     For prejudgment interest according to law.

4.     For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

5.     For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable by jury.


DATED:  January 10, 2018              MUNGER, TOLLES & OLSON LLP


                                      By:  */s/ Kelly M. Klaus*
                                           KELLY M. KLAUS
                                      Attorneys for Plaintiffs

# EXHIBIT A

*Netflix Studios, LLC et al. v. Dragon Media Inc. et al*
**Representative List of Works**

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| The OA, Season 1, Episode 1 | Netflix Studios, LLC | PA2-029-045 | 1/18/2017 |
| Santa Clarita Diet, Season 1, Episode 1 | Netflix Studios, LLC | PA2-028-853 | 2/3/2017 |
| Stranger Things, Season 1, Episode 8 | Netflix Studios, LLC | PA2-009-946 | 9/26/2016 |
| Wet Hot American Summer: First Day of Camp, Season 1, Episode 1 | Netflix Studios, LLC | PA1-996-639 | 4/19/2016 |
| Easy, Season 1, Episode 1 | Netflix Studios, LLC | PA2-009-863 | 9/26/2016 |
| Bosch, Season 1, Episode 1 | Amazon Content Services LLC | PA2-000-165 | 2/10/2016 |
| The Man in the High Castle, Season 1, Episode 1 | Amazon Content Services LLC | PA2-006-699 | 1/15/2015 |
| Transparent, Season 1, Episode 1 | Amazon Content Services LLC | PA1-930-949 | 12/3/2014 |
| Mozart in the Jungle, Season 1, Episode 1 | Amazon Content Services LLC | PA1-963-304 | 3/23/2015 |
| Bosch, Season 1, Episode 1 | Amazon Content Services LLC | PA2-000-165 | 2/10/2016 |
| The Shallows | Columbia Pictures Industries, Inc. | PA1-993-394 | 7/13/2016 |
| Miracles from Heaven | Columbia Pictures Industries, Inc. | PA1-981-803 | 4/7/2016 |
| Spiderman: Homecoming | Columbia Pictures Industries, Inc. | PA2-044-059 | 7/7/2017 |
| Rough Night | Columbia Pictures Industries, Inc. | PA2-041-774 | 6/30/2017 |
| Smurfs: The Lost Village | Columbia Pictures Industries, Inc. | PA 2-029-508 | 4/21/2017 |
| Pete's Dragon | Disney Enterprises, Inc. | PA1-998-053 | 8/26/2016 |
| The Finest Hours | Disney Enterprises, Inc. | PA1-989-069 | 5/27/2016 |

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| Maleficent | Disney Enterprises, Inc. | PA1-899-203 | 6/10/2014 |
| Alice Through the Looking Glass | Disney Enterprises, Inc. | PA1-991-651 | 6/28/2016 |
| Into the Woods | Disney Enterprises, Inc. | PA1-932-175 | 2/11/2015 |
| Paranormal Activity: The Ghost Dimension | Paramount Pictures Corporation | PA1-960-100 | 10/23/2015 |
| Zoolander 2 | Paramount Pictures Corporation | PA1-974-008 | 2/16/2016 |
| 13 Hours: The Secret Soldiers of Benghazi | Paramount Pictures Corporation | PA1-969-757 | 1/19/2016 |
| Whiskey Tango Foxtrot | Paramount Pictures Corporation | PA1-977-149 | 3/4/2016 |
| Independence Day: Resurgence | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA1-994-450 | 7/22/2016 |
| Deadpool | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA1-977-152 | 3/4/2016 |
| Ice Age, Collision Course | Twentieth Century Fox Film Corporation | PA1-995-002 | 7/27/2016 |
| Ice Age: The Meltdown | Twentieth Century Fox Film Corporation | PA1-306-625 | 3/31/2006 |
| War for the Planet of the Apes | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA2-044-947 | 7/25/2017 |
| The Purge: Election Year | Universal City Studios Productions LLLP | PA1-995-003 | 7/11/2016 |
| Despicable Me 3 | Universal City Studios Productions LLLP | PA2-043-544 | 6/27/2017 |
| The Boss | Universal City Studios Productions LLLP | PA1-993-610 | 4/7/2016 |
| Jurassic World | Universal City Studios Productions LLLP; Amblin Entertainment LLC | PA1-946-359 | 6/10/2015 |
| Wonder Woman | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA2-036-078 | 6/6/2017 |

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| Batman v. Superman: Dawn of Justice | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA1-981-624 | 3/30/2016 |
| Dunkirk | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA2-044-585 | 7/20/2017 |
| Harry Potter and the Deathly Hallows Part 1 | Warner Bros. Entertainment Inc. | PA1-721-904 | 3/4/2011 |
| Suicide Squad | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA1-995-698 | 8/4/2016 |