1 | KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
2 | ELIZABETH A. KIM (State Bar No. 295277)
3 | elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
4 | 350 South Grand Avenue
Fiftieth Floor
5 | Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
6 | Facsimile:    (213) 687-3702

7 | MICHAEL B. DESANCTIS (admitted
*pro hac vice*)
8 | michael.desanctis@mto.com
MUNGER, TOLLES & OLSON LLP
9 | 1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
10 | Telephone: (202) 220-1100
Facsimile: (202) 220-2300
11 |

MATTHEW J. FAUST (State Bar No. 254145)
faust@shariffaust.com
KHODADAD D. SHARIF (State Bar No. 187992)
sharif@shariffaust.com
**SHARIF | FAUST LAWYERS, LTD.**
110 West A Street, Suite 1100
San Diego, CA  92101
Telephone:   (619) 233-6600
Facsimile:    (619) 233-6602
Attorneys for Defendants
*Dragon Media, Inc.,*
*Paul Christoforo, and Jeff Williams*

12 | Attorneys for Plaintiffs

13 |

14 | ## UNITED STATES DISTRICT COURT

15 | ## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

16 |

| Netflix Studios, LLC; Amazon Content Services, LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; Universal City Studios Productions LLLP; Warner Bros. Entertainment Inc. <br><br> Plaintiffs, <br><br> vs. <br><br> Dragon Media Inc. d/b/a Dragon Box; Paul Christoforo; Jeff Williams. <br><br> Defendants. | Case No. 2:18-CV-00230-MWF (AS) <br><br> **NOTICE AND JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> **DISCOVERY MATTER** <br><br> Judge:  Hon. Michael W. Fitzgerald <br><br> Magistrate Judge: Hon. Alka Sagar <br><br> Date:  December 11, 2018 <br> Time: 10:00 a.m. <br> Ctrm:  540 <br><br> Fact Discovery Cut-off: Jan. 25, 2019 <br> Expert Discovery Cut-off: Feb. 22, 2019 <br> Pretrial Conference: May 13, 2019 <br> Trial: June 4. 2019 |

40637829.1

1        TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF

2 RECORD:

3        PLEASE TAKE NOTICE that on December 11, 2018, at 10:00 a.m., or as

4 soon thereafter as this matter may be heard in Courtroom 540, 5th Floor, of the

5 above-entitled court located at 255 E. Temple St., Los Angeles, CA, 90012,

6 Plaintiffs Netflix Studios, LLC, Amazon Content Services, LLC, Columbia Pictures

7 Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation,

8 Twentieth Century Fox Film Corporation, Universal City Studios Productions

9 LLLP, and Warner Bros. Entertainment Inc., ("Plaintiffs"), will and hereby do move

10 for an order compelling Defendants Dragon Media, Inc., Paul Christoforo to

11 produce categories of documents identified in Plaintiffs' requests for production

12 Nos. 16, 17, and 18, and for Defendant Jeff Williams to produce categories of

13 documents identified in each one of Plaintiffs' requests for production.

14        This Motion is based on upon this Notice of Motion, the Joint

15 Stipulation, the Declaration of Kelly Klaus and exhibits thereto filed concurrently

16 herewith, as well as any other papers and pleadings that may be filed in

17 connection with this Motion.

18        This Motion is made following the attempted conference of counsel, pursuant

19 to L.R. 37-1, on October 4, 2018, and subsequent email correspondence between the

20 parties that failed to resolve the disputes.

21

22 DATED:  November 20, 2018       MUNGER, TOLLES & OLSON LLP

23

24

25           By:     */s/ Kelly M. Klaus*

26                KELLY M. KLAUS

               Attorneys for Plaintiffs

27

28 40637829.1

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ........................................................................... 1

    A.    Plaintiffs' Introductory Statement ........................................... 1

    B.    Defendants' Introductory Statement ........................................ 3

        1.    The Complaint ................................................................ 3

        2.    Plaintiffs' Failure to Sue the Right Party .................................. 4

        3.    Plaintiff's First Set of Requests for Production ........................... 5

II.   DEFENDANT JEFF WILLIAMS' REFUSAL TO PRODUCE DOCUMENTS ........................................................................... 6

    A.    Plaintiffs' Statement ............................................................. 6

    B.    Defendants' Statement .......................................................... 8

III.  REQUESTS 16, 17, 18 ................................................................. 11

    A.    Plaintiffs' Statement ........................................................... 11

    B.    Defendants' Statement ........................................................ 12

FILER'S ATTESTATION ...................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arista Records LLC v. Lime Grp. LLC*,
   784 F.Supp.2d 398 (S.D.N.Y. 2011) ........................................................... 7, 8, 10

*In re Bankers Trust Co.*,
   61 F.3d 465 (6th Cir. 1995) ................................................................................ 7

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir.1975) ................................................................................ 8

*Comcast of Los Angeles, Inc. v. Top End. Intern., Inc.*,
   2003 WL 22251149 (C.D. Cal. July 2, 2003) ........................................ 6, 7, 8, 10

*Gray v. Faulkner*,
   148 F.R.D. 220 (N.D. Ind. 1992) ................................................................. 7, 10

*Kim v. Goddard*,
   2008 WL 11422046 (C.D. Cal. Jan. 17, 2008) ....................................................... 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ........................................................................................ 11

*Soto v. City of Concord*,
   162 F.R.D. 603 (N.D. Cal. 1995) ............................................................. 6, 9, 10

*Universal City Studios Productions LLLP et al. v. TickBox TV LLC et al.*, 2018 WL 1568698 (C.D. Cal. Jan. 30, 2018) ........................................ 2

**FEDERAL RULES**

Fed. R. Civ. P. 34 ........................................................................................... 6

Fed. R. Civ. P. 37(a) ......................................................................................... 1

Local Rule 37-1 ............................................................................................ 1, 2

Local Rule 37-2 ............................................................................................... 1

Rule 34 ............................................................................................................. 6

-ii-

# I.   <u>INTRODUCTION</u>

Pursuant Federal Rule of Civil Procedure 37(a) and Local Rule 37-2, the parties respectfully submit the following joint stipulation regarding the motion to compel production of documents filed by Plaintiffs Netflix Studios, LLC, Amazon Content Services, LLC, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, and Warner Bros. Entertainment Inc., ("Plaintiffs").  Counsel for the parties conferred regarding this matter on October 4, 2018 in accordance with Local Rule 37-1, but were unable to reach agreement regarding this matter.

## A.   <u>Plaintiffs' Introductory Statement</u>

This case involves the knowing and intentional inducement of the widespread infringement of Plaintiffs' copyrighted motion pictures and television shows ("Copyrighted Works").  Defendant Dragon Media, Inc. d/b/a Dragon Box ("Dragon Media") and its CEO, Defendant Paul Christoforo, sell "Dragon Box" devices and subscriptions to the Dragon Box service.  Their paying customers use Dragon Box devices and corresponding subscriptions to get "free" and unauthorized access to Plaintiffs' Copyrighted Works.

Defendants Dragon Media and Christoforo also operate an authorized re-seller scheme to expand the scope of their sales.  Defendant Jeff Williams is an authorized re-seller that sells Dragon Box devices and subscriptions on behalf of Dragon Media and Christoforo.  Williams is the CEO of West Coast Dragon Box Inc. ("West Coast Dragon Box"), an apparently self-owned company.  Klaus Decl. Ex. B.  Williams has not produced any information demonstrating that this entity is anything other than a form over which he is the sole and controlling shareholder.

Defendants intentionally induce the infringement of Plaintiffs' Copyrighted Works and profit from promising customers (and delivering) access to copyrighted content.  Defendants tell customers to "Watch your Favourites Anytime For FREE,"

"Watch virtually every movie, Most in High Definition, TV Shows and Sports … and much more."  (Klaus Decl. Ex. A (Compl.) ¶ 1.)  In so doing, Defendants are no different than the defendants in *Universal City Studios Productions LLLP et al. v. TickBox TV LLC et al.*, 2018 WL 1568698 (No. 17-cv-07496-MWF) (C.D. Cal. Jan. 30, 2018).  As in *TickBox*, there is "ample evidence" that Defendants here "explicitly advertised the [Dragon Box] as a means to accessing unauthorized versions of copyrighted audiovisual content," "affirmatively provided instructions to [customers] concerning how to effectively access copyrighted material," failed to implement any filtering mechanisms to prevent infringement, and profited from their customers' infringement.  *TickBox*, 2018 WL 1568698, at *11.

Plaintiffs served their first set of requests for production on July 24, 2018. Klaus Decl. Ex. C.  Dragon Media and Christoforo served joint objections and responses on September 5, 2018, and Williams also served objections on that date. *Id.* Ex. D, E.  Dragon Media and Christoforo then produced 2,927 pages of documents on September 27, 2018, in response to Plaintiffs' 23 separate document requests.  Of those 2,927 pages, at least 1,200 are indecipherable emails that have a handful of characters per line.

Williams failed to produce any responsive documents, asserting that while "West Coast Dragon Box LLC" was in "possession, custody, or control" of responsive documents, he was the "wrong" party to be sued.  Klaus Decl. Ex. E.

Pursuant to Local Rule 37-1, counsel for Plaintiffs requested a meet-and-confer on September 24, 2018.  Klaus Decl. Ex. F.  That request identified multiple deficiencies in Dragon Media and Christoforo's production of documents, as well as Williams' failure to produce any documents at all.  The parties conferred on October 4, 2018, and reached agreement as to Defendants' production of a privilege log and certain unredacted, non-privileged documents, but were unable to reach agreement on Williams' refusal to produce documents or Dragon Media and Christoforo's failure to produce responsive financial documents.

1  Plaintiffs therefore request that the Court issue an order compelling: (1)
2  Williams to produce documents purportedly in the possession, custody, and control
3  of West Coast Dragon Box because these documents are reasonably available to
4  Williams; and (2) Dragon Media and Christoforo to immediately produce
5  documents responsive to Requests 16, 17, and 18 because it has been over three
6  months since Plaintiffs requested these documents and Defendants have provided no
7  plausible excuse for this delay in production.

8  **B.   Defendants' Introductory Statement**

9  Plaintiffs have filed this Motion although there is no dispute at issue. It has
10  always been Defendants' position that they would produce the requested financial
11  statements as soon as they obtained a copy from Defendant Dragon Media, Inc.'s
12  ("DMI") tax attorney. Now that DMI has a copy of the financial statements in its
13  possession, it will produce them to Plaintiffs as soon as a protective order is in
14  place. A proposed stipulated protective order has been sent to Plaintiffs' counsel.
15  Furthermore, Defendants have continuously stated to Plaintiffs that Jeff Williams
16  ("Defendant Williams"), is not the right party to be sued and any and all responsive
17  documents would be in the possession of West Coast Dragon Box ("West Coast"),
18  the entity that has not been sued to this date, nor has it received any subpoenas. As it
19  was promised to Plaintiffs, Defendant Williams has produced supplemental
20  responses stating that he has no responsive documents in his possession, custody, or
21  control, and that any and all relevant documents sought by Plaintiffs might be in the
22  possession of West Coast, who was the authorized distributor of the Dragon Box
23  Devices.

24  **1.   The Complaint**

25  Plaintiffs initiated this lawsuit on or about January 10, 2018, against DMI,
26  Defendant Paul Christoforo ("Defendant Christoforo"), and Defendant Williams,
27  alleging that the Defendants had intentionally infringed on Plaintiffs' copyrighted
28  works. However, despite the general allegations of the infringement, the complaint

40637829.1

-3-

1  includes no allegation, whatsoever, as to any actual instance of infringement where
2  either Defendants or any of their customers actually infringed on any of the
3  copyrighted works by illegally streaming them on Internet.

4  **2.**    **Plaintiffs' Failure to Sue the Right Party**

5  On or about April 18, 2018, Defendants filed their Answers, wherein they
6  denied the allegations asserted in the Complaint. In his Answer, Defendant Williams
7  stated—at least 28 times—that he was not the right party to be sued. He also
8  included an affirmative defense stating that Plaintiffs had failed to sue the right
9  party West Coast.  It was in fact West Coast that had been working as an authorized
10 distributor of DMI, selling some Dragon Box Devices to third party consumers.
11 Notably, Defendant Williams did not undertake any actions in his individual
12 capacity: e.g. he did not post any advertisements, sell any Dragon Box Devices, or
13 take any payments, in his individual capacity.  Defendant Williams was not the
14 authorized distributor.  Although these facts were brought to Plaintiffs' attention
15 from the very beginning, they chose not to add West Coast as a party to the case.
16 Instead, Plaintiffs intentionally sued the wrong party and intentionally continued
17 pursuing their claims against the wrong party.

18 At all times, Defendants have alleged that they have not intentionally or
19 willfully infringed upon any of Plaintiffs' copyrighted works, nor have they
20 intentionally or willfully contributed to such infringements that may have been
21 committed by third parties over whom Defendants have no control. The Dragon Box
22 Device—similar to any computers or technical device—can be used for legal
23 purposes.  Furthermore, DMI does not own any software applications or updates.
24 Any software applications or updates were designed and owned by third parties.
25 Additionally, Plaintiff Amazon has been knowingly and intentionally marketing and
26 selling the Dragon Box Devices, as well as books and materials assisting third
27 parties in infringing upon copyrighted works, on its website.

28

### 3.     Plaintiff's First Set of Requests for Production

On or about September 5, 2018, Defendants served their objections and responses on Plaintiffs. (Declaration of Matthew J. Faust ("Faust Decl.") ¶ 3-4.) During the meet and confer process, Defendants' counsel stated that, to the best of their knowledge, no documents had been withheld based on any of the objections asserted as to the discovery propounded on DMI or Defendant Christoforo. *Id.* ¶ 5. However, she stated, on multiple occasions, that although the financial statements were in the custody of DMI, the documents were only in possession of its tax preparer and that they needed additional time to obtain the documents from the tax preparer. *Id.* ¶¶ 5-7. At no time, did Defendants' counsel represent that they would not be producing the financial statements to Plaintiffs. *Id.* During the meet and confer, in good faith, Defendants' counsel stated that given that West Coast had not been sued, any documents in its possession, custody, or control had no relevancy to the matter. *Id.*

Despite Defendants' attempts to resolve the discovery issues arising from the requests for production propounded by Plaintiffs—some of which have been resolved—Plaintiffs provided no response to Defendants' last meet and confer dated October 31, and instead sent a draft motion to compel production of documents, three weeks later. *Id.* ¶¶ 7-8. Defendants did not expect to receive the Motion at the time given that Plaintiffs' counsel knew Defendants' counsel of record was to be appearing in a trial at that time. *Id.* By that time, the trial had been trailed and it took place beginning on November 5, 2018. *Id.* Also that week, the other shareholder in Defendants' counsel's firm, and the associate attorney helping in this case, were involved in trial in a different matter.

Additionally, although Defendants have in good faith attempted to resolve the two discovery issues raised in this Motion, and have told Plaintiffs that the financial documents will be produced once the protective order is in place, and Defendant Williams' supplemental responses has been produced, Plaintiffs have refused to

withdraw the Motion. *Id.* ¶ 8. Defendants reasonably believe that Plaintiffs only intend to increase the costs of litigation for Defendants.

## II.   DEFENDANT JEFF WILLIAMS' REFUSAL TO PRODUCE DOCUMENTS

### A.   Plaintiffs' Statement

In response to Plaintiffs' requests for production, Defendant Jeff Williams flatly objected on two grounds:  (1) he lacks "possession, custody, or control [of responsive documents], in his *individual* capacity," because any responsive documents would be in the "possession, custody, and control of WEST COAST DRAGON BOX [INC.]"[1]; and (2) he is not the "proper party" to be sued.  Klaus Decl. Ex. E (Williams' Response) (emphasis added).  Neither objection has any legal basis.

First, Williams, as the CEO of West Coast Dragon Box Inc., is obligated under Rule 34 to produce any documents "reasonably available to him" from West Coast Dragon Box Inc., since the entity is subject to his control and Williams has the legal right to obtain documents from West Coast Dragon Box Inc.  *Kim v. Goddard*, 2008 WL 11422046, at *2 (C.D. Cal. Jan. 17, 2008) ("'[A] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.'" (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995)).  "'[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand.'"  *Comcast of Los Angeles, Inc. v. Top End.*

---

[1] Though Williams refers to "WEST COAST DRAGON BOX LLC," no such corporate entity appears to exist.  West Coast Dragon Box Inc., however, is a California corporation operating under California Corporate Number C4085561.  *See* Klaus Decl. Ex. B.  Jeff Williams is listed as the "Chief Executive Officer" of said corporation.

40637829.1
-6-

*Intern., Inc.*, 2003 WL 22251149, at *4 (C.D. Cal. July 2, 2003) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)).  Williams therefore has an "'affirmative duty to seek that information reasonably available to [him] from [his] employees, agents, or *others* subject to [his] control.'"  *Comcast of Los Angeles*, 2003 WL 22251149, at *4 (emphasis added) (quoting *Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D. Ind. 1992)).

Williams is an authorized reseller for Dragon Media.  Documents produced by Dragon Media confirm that Williams has purchased hundreds of Dragon Box devices for resale and has provided support to Dragon Box customers.  *See, e.g.*, Klaus Decl. Ex. G (DMI 2633-34 [Williams responding to customer inquiries on Dragon Box Facebook page]; 2642 [reference to "Jeff" in a text message thread with Christoforo titled "Dragon Box Sup[port]"]; 2776-77 ["Jeff Williams" in a chart appearing to indicate he purchased and paid for 200 Dragon Box devices for resale].  Williams appears to have formed a corporate entity—West Coast Dragon Box—but it beggars belief that Williams, the CEO and apparent owner and sole employee, cannot procure documents from the "company" he controls.

Second, Williams asserts that Plaintiffs should have sued West Coast Dragon Box in order to obtain responsive documents, but Williams is obligated to produce documents "reasonably available" to *him*.  It appears from the record that Williams controls West Coast Dragon Box and personally engaged in infringing conduct by encouraging and assisting Dragon Box customers locate and stream copyrighted content.  Williams has not filed any motion claiming that he is an improper party, or that West Coast Dragon Box is an indispensable party.  Nor is there any reason to think that Williams could make such a showing.  Even if Williams could make such a showing, the corporate form is no defense to liability for copyright infringement. *See, e.g.*, *Arista Records LLC v. Lime Grp. LLC*, 784 F.Supp.2d 398, 438-39 (S.D.N.Y. 2011) (finding CEO liable for company's inducement of infringement). That Williams intends to assert a defense that he is not the proper party to be sued

only makes discovery related to his *personal involvement* in inducing infringement even more relevant.

For example, in *Lime Group*, the CEO was held personally liable for inducing infringement because he "directed and benefited" from the infringing activities of the corporation. *Id.* at 438. The "evidence, taken together" established that the CEO "knew about the infringement being committed" and benefited from the corporation's inducement of infringing activity. *Id.* at 438-49. Even without the benefit of discovery responses from Williams, the "evidence, taken together" here also demonstrates that Williams "directed and benefited" from the infringing activities of West Coast Dragon Box. Williams is listed as the purchaser of hundreds of Dragon Box devices, which he presumably marketed and sold through West Coast Dragon Box. Klaus Decl. Ex. G (DMI 2676-77). As the party resisting discovery, Williams bears the "burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting [his] objections." *Comcast of Los Angeles*, 2003 WL 22251149, at *4 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)). As set forth above, Williams has not and cannot carry this burden.

Plaintiffs therefore request that the Court order Williams to produce any and all documents responsive to Plaintiffs' requests, including those that are purportedly in the "possession, custody, and control" of West Coast Dragon Box Inc.

## B.   Defendants' Statement

The Court should deny the Motion because Defendant Williams does not have any of the responsive documents in his possession, custody, or control, in his individual capacity, and Plaintiffs have failed to sue West Coast, the company that may have the responsive documents in its possession, or to even issue a subpoena to West Coast. In his Answer, Defendant Williams stated—at least 28 times—that he was not the right party to be sued. He also included an affirmative defense stating that Plaintiffs had failed to sue the right party, West Coast. It was in fact West

Coast that had been working as an authorized distributor of DMI, selling some Dragon Box Devices to third party consumers. Although these facts were brought to Plaintiffs' attention from the very beginning, they chose not to add West Coast as a party to the case. Instead, Plaintiffs intentionally sued the wrong party and intentionally continued pursuing their claims against the wrong party.

Furthermore, the discovery requests at issue seek documents relating to the design of the Dragon Box Device, the Dragon Media software, the advertisements, sales tax, and monthly and annual revenues and profits, amongst other requests. Defendants have not shown how any of these document requests may be relevant to Defendant Williams, when it was West Coast who as the authorized distributor of DMI, conducted business and as a result might be in possession of the responsive documents. Defendant Williams has provided his supplemental responses stating that he does not have any relevant documents in his possession, custody, or control, and that any such documents might be in the possession of West Coast.

In its argument, Plaintiffs have cited to *Soto v. City of Concord*, which is distinguishable from this case. 162 F.R.D. 603, 619 (N.D. Cal. 1995). Specifically, in *Soto*, the plaintiff sued the police for police brutality. One of the elements of suing the police on such a claim is that it does not properly train its officers. To obtain this information, the plaintiff served discovery; some of the requests sought psychiatric evaluations of individual police officers with a history of violence. The defendant police department claimed they did not have these psychological evaluations which the plaintiff could prove they had. The court in *Soto* granted the motion to compel production of the documents that the defendant police department and the defendant officers claimed to have been returned to the non-party physician. First, the issue of relevance was previously established, and then the court disbelieved the police department's assertions that they did not have the documents.

The present case, however, is distinguishable from *Soto*. First, West Coast is not a party to the case. Second, Defendant Williams does not have a right to

produce documents belonging to the entity that have no relevancy to the case. In fact, in contrast to *Soto*, Plaintiffs have not met their burden by showing the relevancy of the documents they seek from Defendant Williams. Third, Defendant Williams has stated that he does not have the requested documents in his possession, custody, or control, in his individual capacity.

Similarly, *Comcast of Los Angeles, Inc. v. Top End. Intern., Inc.*— cited by Plaintiffs— where the plaintiffs filed a complaint against four corporations and individual officers, is distinguishable from this case.  In that case, the court found that the plaintiffs served discovery requests on individual defendants, "in their capacities as 'Custodian of the Records of [the entity defendants],' rather than in their individual capacities." 2003 WL 22251149, at *4-5. Thus, the court ordered that the individual defendants, as the custodian of records of the corporate defendants, to produce the responsive documents. In the present case, however, Defendant Williams was not asked to produce documents in his capacity as custodian of records of a defendant entity, but rather he was asked to produce documents in his individual capacity. Again, in contrast to *Comcast*, West Coast has not been made a party to this case.

Additionally, in *Arista Records LLC v. Lime Grp. LLC*, also cited by Plaintiffs, both the company as well as its chairman and sole director had been sued. Again, despite Plaintiff's effort to compare Defendant Williams to the chairman in *Arita Records,* they fail to recognize that the chairman was asked to produce a defendant entity's documents.

Furthermore, Plaintiffs cite to *Gray v. Faulkner,* which quotes the following: "'affirmative duty to seek that information reasonably available to [him] from [his] employees, agents, or *others* subject to [his] control.'" 148 F.R.D. 220, 223 (N.D. Ind. 1992). Although Defendant Williams is the owner and officer of West Coast, West Coast is not its agent or employee, and thus Defendant Williams has no right or obligation to seek documents from West Coast.  Accordingly, for the foregoing

reasons, Defendant Williams has no obligation to produce somebody else's records for a lawsuit that they are not alleged to have any wrongdoing in and the issue of relevance has not been established.

## III.   REQUESTS 16, 17, 18

### A.   Plaintiffs' Statement

These requests seek financial documents regarding Dragon Media and the sales of Dragon Box devices; documents regarding the charging of, or paying for sales tax in connection with the Dragon Box service; and communications with actual or prospective investors. Documents regarding these matters concern the relationship between high-volume infringing use and Defendants' financial motives for selling and promoting the illegal Dragon Box service. Such documents are directly relevant to Plaintiffs' claims as corroborating evidence of unlawful intent. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939-40 (2005) (finding probative of unlawful intent the fact that the "commercial sense of [defendant's] enterprise turns on high-volume use, which the record shows is infringing").

Dragon Media and Christoforo do not deny the relevance of these requests, do nor do they deny that they have "control" of nonprivileged documents responsive to these requests. Klaus Decl. Ex. H. Instead, Dragon Media and Christoforo have asserted that the sole copies of said documents are in the possession of their tax attorney. *Id.*

Plaintiffs served these requests on July 24, 2018. It has been over three months since that date. Dragon Media and Christoforo produced documents on September 27, 2018, and on that date first asserted that financial documents were "solely in possession of [Dragon Media's] financial person" and that Dragon Media would produce these documents "[a]s soon as it receives" them. Klaus Decl. Ex. I. Plaintiffs responded the next day asking for an estimated date by which to expect these documents. *Id.* A week later, defense counsel responded, explaining that the

financial documents were "in the possession of our client's tax attorney" and that it "has been a busy time of the year for her."   Klaus Decl. Ex. H.   During the meet-and-confer that same day, defense counsel again asserted that the tax attorney was too busy to produce the documents to her clients because of the October 15th tax filing deadline.  Defendants have not plausibly explained why returning their own financial documents via email would impose any burden on this unnamed tax attorney.  Nor have they explained why these documents could not have been requested and produced by the tax attorney to her clients well before this "busy time," i.e., in July or August.  That two weeks have passed since the October 15th deadline without any production of documents makes Defendants' excuses for continuous delay only more dubious.

Plaintiffs therefore request that the Court order Defendants Dragon Media, Inc. and Christoforo produce documents responsive to Requests 16, 17, and 18, immediately.

### B.   Defendants' Statement

Defendants have not intentionally withheld any financial documents, and have continuously and unequivocally told Plaintiffs that the financial statements would be produced once obtained from the tax attorney. It has been brought to Plaintiffs' attention that DMI is a small company which has only a tax attorney who takes care of all its finances. DMI had asked its tax attorney for the financial statements responsive to Plaintiffs' discovery requests on numerous occasions, and its counsel had explained to Plaintiffs' counsel, on multiple occasion, that they were waiting for the tax attorney to produce to them the financial statements, and that DMI or Defendant Christoforo did not have any of the financial statements at issue in their possession. (Faust Decl. ¶¶ 5-7.) Defendants' counsel explained to Plaintiffs' counsel that October 15th marked an important tax deadline for the tax attorney and as such they were in need of additional time, and in exchange they were willing to provide Plaintiffs' counsel with any extension they needed to file

their motion to compel discovery, if necessary. *Id.* Defendants have in good faith cooperated with Plaintiffs, and on November 16, 2018, sent a proposed stipulated protective order to Plaintiffs' counsel, which once it becomes an order, the financial documents will be produced. *Id.* ¶ 8.

Despite Defendants' efforts, Plaintiffs have in bad faith filed this Motion which has no goal but to increase the costs of litigation for Defendants. Plaintiffs' counsel knows that all financial statements will be produced to them as soon as the protective order is in place, and yet they insist on filing this Motion. In fact, there is no dispute and this Motion is moot. Additionally, Plaintiffs chose to send this Motion to Defendants at the time that they knew of Defendants' counsel's engagement in another trial. Accordingly, Defendants request the Court to deny the Motion and to grant the stipulated protective order, after which, Defendants will produce the responsive financial documents.

1    DATED:  November 20, 2018          MUNGER, TOLLES & OLSON LLP

2

3

4                                       By:    _/s/ Kelly M. Klaus_
                                               KELLY M. KLAUS
5                                       Attorneys for Plaintiffs

6

7    DATED:  November 20, 2018          SHARIF FAUST LAWYERS, LTD

8

9

10                                      By:    _/s/ Matthew J. Faust_
                                               MATTHEW FAUST
11                                      Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **FILER'S ATTESTATION**

Pursuant to L.R. 5-4.3.4(a)(2), I, Kelly M. Klaus, certify that that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

November 20, 2018

By:    */s/ Kelly M. Klaus*
       KELLY M. KLAUS
       Attorneys for Plaintiffs

40637829.1

-15-