UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 18-230-MWF (ASx) | Date:  December 21, 2018 |
| Title:    Netflix Studios, LLC, et al. v. Dragon Media Inc., et al. | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE [46]

Before the Court is an Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Application"), filed by Netflix Studios, LLC; Amazon Content Services, LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; Universal City Studios Productions LLLP; and Warner Bros. Entertainment Inc.'s (together, "Plaintiffs"), on December 20, 2018.  (Docket No. 46).  The Court has read and considered the papers on the Application.

For the reasons discussed below, the Application is **GRANTED** *in part* and **DENIED** *in part*.  While Plaintiffs have made a strong showing of the factors to justify a temporary restraining order or a preliminary injunction, the Court concludes that a TRO is inappropriate in light of Plaintiffs' nearly year-long delay in bringing the Application and until both parties can be heard on the issue of injunctive relief.  The Court, however, is willing to issue an Order to Show Cause as to why a preliminary injunction should not be granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-230-MWF (ASx)     Date:  December 21, 2018
Title:    Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

## I. BACKGROUND

The following facts are alleged in the Complaint or included in declarations attached to the Application.

### A. The Parties and Pre-Lawsuit Conduct

Plaintiffs are various studios that produce motion pictures and television shows. (Complaint ("Compl.") ¶¶ 4–11 (Docket No. 1)). Defendant Dragon Media, Inc. ("Dragon Media") markets and sells "Dragon Box," a computer hardware device that is used as a tool to stream Plaintiffs' motion pictures and television shows. (*Id.* ¶¶ 1, 13). Defendant Paul Christoforo is Dragon Media's Chief Executive Officer. (*Id.* ¶ 14).

The Dragon Box device, after being purchased by a customer, presents "the customer with menus and other features to aid the customer in finding virtually any television show or movie, including movies still in theaters . . . [and] use[s] software, i.e., illicit addons such as 'Covenant,' to link [the] customers to the content they've selected." (App. at 3). Dragon Box links to content that is unlicensed and "without any royalties being paid to the rightful copyright owners." (*Id.*). Two advertisements for the Dragon Box are reproduced below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-230-MWF (ASx)                    Date:  December 21, 2018
Title:      Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

 

(Declaration of Michael B. DeSanctis ("DeSanctis Decl."), Ex. D; Compl. ¶ 39).

After installing the Dragon Box, a customer would have seen the following menu:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-230-MWF (ASx)                    Date:  December 21, 2018
Title:    Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.



(Declaration of Matthew Fulton ("Fulton Decl.") ¶¶ 5–6).  And across the bottom of the menu, the Dragon Box presented a "curated selection of various illicit addons, including 'Covenant,' 'Inferno,' and 'Silent Hunter,'" which function by searching repositories of content across the Internet and returning links to sources of infringing content.  (*Id.* ¶ 7).  Covenant, for example, is a "popular addon that scrapes a large number of repositories for streaming . . . popular and recently released movies, including some still in theaters or otherwise unavailable for online streaming."  (*Id.* ¶¶ 8–9).

### B. Post-Lawsuit Conduct

On January 10, 2018, Plaintiffs commenced this action.  (*See generally* Compl.).  Plaintiffs assert two claims for relief: (1) copyright infringement and (2) contributory copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*  (*Id.* ¶¶ 48–67).

Shortly after Plaintiffs commenced this action, Dragon Media "represented that [it] would stop selling Dragon Box devices" and repeatedly represented for several

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 18-230-MWF (ASx) | **Date:** | December 21, 2018 |
| **Title:** | Netflix Studios, LLC, et al. v. Dragon Media Inc., et al. | | |

months that it "soon would be pushing out a new software update that would allow Dragon Box users to stream only fully licensed content." (App. at 4; DeSanctis Decl. ¶ 3).

On September 18, 2018, however, Dragon Media "announced that new software updates were available" and along with the software updates, a new service called "BlendTV." (App. at 4–5). When turning on the Dragon Box, a customer would have seen the following menu:



(Fulton Decl. ¶ 16). After selecting the BlendTV option, a customer would be presented with a variety of options for content. A screenshot of the various options is reproduced below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-230-MWF (ASx)                    Date:  December 21, 2018
Title:    Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.



(*Id.* ¶ 20).

Dragon Box customers could then access streams in one of two ways: (1) "'live' broadcast and cable television channels that are streamed over the Internet as they are being broadcast; and (2) video-on-demand ('VOD') options where a customer can select from dozens of options for television shows and movies." (App. at 6). Dragon Box customers could also record programs and play them later. (*Id.*).

Below is a screenshot of the "menu of television programming organized [by] channel" and what a Dragon Box customer would have seen:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-230-MWF (ASx)            **Date:** December 21, 2018
**Title:**     Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.



(Fulton Decl. ¶ 24). A Dragon Box customer may also search for specific movies and television shows. (*Id.* ¶¶ 26–27).

According to Plaintiff, within three weeks of launching BlendTV, Dragon Media "announced [its] intent to switch to yet another, purportedly lawful, content provider and informed customers via Facebook that BlendTV would not be available as of November 26[, 2018], and recommended that customers try a different service while [Dragon Media] worked to resolve the issue or find another content provider." (App. at 8).

On December 10, 2018, the parties held an unsuccessful mediation before a Magistrate Judge. (*Id.* at 2). The very next day, Dragon Media launched "My TV Hub," which "appears to be a copycat of BlendTV." (*Id.* at 9). On the same day, Mr. Christoforo also failed to appear for his properly noticed deposition. (*Id.* at 2).

Below is a menu of movies and television programming that a customer would see after launching My TV Hub:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-230-MWF (ASx)               Date:  December 21, 2018
Title:     Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.



(Fulton Decl. ¶ 31).  Just like BlendTV, My TV Hub "offers customers options to watch a 'live' transmission of [a specific programming] at [a] specified time and date, or to watch a 'RECORDED' copy . . . on-demand."  (App. at 9).

According to Plaintiffs, Dragon Media has promoted and called the various iterations of its software "legal cable service[s]."  (*Id.* at 11).  For instance, Dragon Media marketed BlendTV as a product that gives customers "over 65 Live US TV Channels[,] 30 hours of Cloud-PVR, 7-day Playback, and watch on the go options" and "for only $39.95 per month."  (*Id.* at 10; DeSanctis Decl., Exs. K–L).  And when switching from BlendTV to My TV Hub, Dragon Media similarly informed customers that "all you will have to do is go to a new website and resubscribe and log in and the content will be there plus more."  (App. at 11).

Through their Application, Plaintiffs seek a temporary restraining order enjoining Dragon Media and Mr. Christoforo from continuing "to utilize and promote any illicit streaming service . . . to customers [by] providing copyrighted content for nothing."  (*Id.*).

---

**CIVIL MINUTES—GENERAL**                                                            8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-230-MWF (ASx)          Date: December 21, 2018
Title:     Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

## II.    DISCUSSION

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions, and courts apply the same standards to both. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking injunctive relief must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in its favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).

A plaintiff must "make a showing on all four prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit employs the "serious questions" version of the "sliding scale" approach when applying the four-element *Winter* test. *Id.* at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

Here, Plaintiffs appear to have made a strong showing of the four prongs of the *Winter* test to justify injunctive relief:

*First*, assuming that the allegations in the Complaint are true, Plaintiffs have made a substantial showing that Dragon Media and Mr. Christoforo violated the Copyright Act.

In order to prevail on their copyright infringement claims, Plaintiffs will need to demonstrate two basic things: (1) "ownership of the allegedly infringed material"; and (2) violation of "at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiffs have demonstrated that they own allegedly infringed content by including "a representative list of [movies] that are infringed through Dragon Box,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-230-MWF (ASx)        **Date:** December 21, 2018
**Title:** Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

including Wonder Woman, Jurassic World, and Deadpool. (*See* DeSanctis Decl., Ex. R).

Plaintiffs also appear to have demonstrated that they are likely to prevail on their inducement claims. Plaintiffs rely primarily on two cases to support their argument that Dragon Media and Mr. Christoforo are liable for the infringement of Plaintiffs' exclusive rights under an inducement / contributory infringement theory: *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), and *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020 (2013).

In *Grokster*, the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 936–37.

In *Fung*, the Ninth Circuit analyzed *Grokster* and held that a defendant may be held liable for copyright infringement under *Grokster*'s inducement theory where four elements are present: "(1) the distribution of a device or product [by the defendant], (2) acts of infringement [by third parties], (3) an object [of the defendant] of promoting [the device's or product's] use to infringe copyright, and (4) causation. *Fung*, 710 F.3d at 1032.

Accepting the allegations in the Complaint as true, the Court is persuaded that all four elements set forth in *Fung* are likely satisfied: (1) Dragon Media and Mr. Christoforo market, promote, and sell various iterations of software (*i.e.*, BlendTV and My TV Hub); (2) the intended use of the Dragon Box is for customers to select titles and receive unauthorized streams from BlendTV and My TV Hub; (3) Dragon Media and Mr. Christoforo's objective is to promote copyright infringement, as demonstrated by various advertisements and representations that Dragon Media would stop selling Dragon Box devices; and (4) there is sufficient evidence that the Dragon Box can be and is used to access infringing content and sufficient evidence of Dragon Media's fault, primarily in the form of its advertisements and representations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-230-MWF (ASx)          **Date:** December 21, 2018
**Title:** Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

    *Second*, it is not entirely clear that Plaintiffs are likely to suffer irreparable harm if Dragon Media and Mr. Christoforo are permitted to continue marketing and selling Dragon Box between now and the hearing on a motion for preliminary injunction. Plaintiffs produce and own various movies and television shows, and notes that for each day that Dragon Media's customers continue to stream something on Dragon Box, Plaintiffs' goodwill and reputation will diminish. (App. at 19–21). This contention, of course, has merits. *See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm.") (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001)).

    Yet, the Court is concerned with Plaintiffs' delay in bringing the Application, especially considering the action commenced nearly a year ago and Plaintiffs have had ample opportunity to seek injunctive relief. A delay in filing a request for temporary relief, like here, may undercut a claim that a plaintiff will suffer immediate and irreparable harm. *See, e.g.*, *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *see also* Beverly Reid O'Connell & Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, National Edition*, § 13:95 (updated Apr. 2018) ("An important factor will be whether the applicant could have sought relief earlier by a motion for preliminary injunction, avoiding the necessity for a last-minute TRO. Delay in seeking relief may be evidence of laches . . . or negate the alleged threat of 'immediate' irreparable injury . . . The court has discretion to deny the application on either ground.").

    While there have been three iterations of the same streaming service and Dragon Media appeared to have made the representation that it would stop selling Dragon Box devices, Plaintiffs could have moved for injunctive relief nearly a year ago, or when they filed the Complaint on January 10, 2018.

    Let me drop the third person for a moment. Plaintiffs have explained the reason for the delay, and I'd rather that a plaintiff be cautious rather than rash. I don't mean

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-230-MWF (ASx)          Date:  December 21, 2018
Title:      Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

to criticize Plaintiff's counsel.  But the fact that equitable relief is likely justified before the end of trial is not the same as saying that it's justified *right now*.  If damages are available, then Plaintiffs will suffer little.  If Dragon Box is judgment proof, then these Plaintiffs can temporarily bear the limited further harm that will accrue.

*Third*, the balance of the equities favors Plaintiffs, based on the strength of the showing.  But for all the Court knows, requiring Dragon Media and Mr. Christoforo to stop marketing and selling the Dragon Box would shut-down a business that might have some legitimate purpose.  This is akin to saying that granting summary judgment is appropriate if that's the correct ruling.

*Fourth*, injunctive relief is in the public interest because "protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures" is a compelling interest.  *Disney Enter. v VidAngel*, 869 F.3d 848, 867 (9th Cir. 2017) (quotations and citations omitted).

While Plaintiffs have made a strong showing of the factors to justify granting a preliminary injunction, and consequently a temporary restraining order, the Court concludes that it is inappropriate in light of the delay and until both parties can be heard on the issue of injunctive relief.  As noted above, the Court is willing to issue an Order to Show Cause ("OSC") as to why a preliminary injunction should not be granted.

### III.  CONCLUSION

For the foregoing reasons, the Application is **GRANTED** *in part* and **DENIED** *in part*.

As to the OSC, the briefing schedule is as follows:

- Defendants shall file the response to the OSC by **December 28, 2018**;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-230-MWF (ASx)          **Date:** December 21, 2018
**Title:**     Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.

- Plaintiffs shall file a reply by **January 4, 2019**;

- The hearing shall be on **January 8, 2019, at 10:00 a.m.** The parties may appear, either in person or telephonically, in Courtroom 5A of the First Street Courthouse for the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012.

IT IS SO ORDERED.