Matthew J. Faust, State Bar No. 254145
faust@shariffaust.com
Khodadad D. Sharif, State Bar No. 187992
sharif@shariffaust.com
**SHARIF | FAUST LAWYERS, LTD.**
110 West A Street, Suite 1100
San Diego, CA  92101
Telephone:   (619) 233-6600
Facsimile:    (619) 233-6602

Attorneys for Defendants
*Dragon Media, Inc.,*
*Paul Christoforo, and Jeff Williams*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX STUDIOS, LLC, *et al.,*<br><br>Plaintiff,<br><br>v.<br><br>DRAGON MEDIA, INC. *et al.*<br><br>Defendants. | Case No.: 2:18-cv-00230 MWF (ASx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR REQUEST FOR EXTENSION OF TIME TO OPPOSE** |

## <u>OPPOSITION</u>

In 1854, Charles Dickens wrote the memorable tale, *A Christmas Carol*, in which Scrooge complained that "[E]very idiot who goes about with 'Merry Christmas' on his lips should be boiled with his own pudding and buried with a stake of holly through his heart."  In true Dickensonian fashion, the Plaintiffs in this case have chained Court and

counsel with a fully-briefed, 150-page motion for preliminary injunction, cloaked in the spectre of an ex parte application.  Plaintiffs' request plainly seeks to deprive the Defendants of an opportunity to file a meaningful opposition on the last working day before the Christmas holiday arrives, seeking to transform a season dedicated to joy into one filled with toil.

In that light, Defendants file the instant opposition, limited as it may be in the meager time afforded to them.  In this Opposition, Defendants primarily seek an appropriate time in which to file a substantive response (Defendants seek 30 January, 2019).

However, if the Court is inclined to consider Plaintiffs' Application, Defendants request that the Court deny it because: (1) Plaintiffs have not demonstrated a need for emergent relief, and thus a T.R.O. is not warranted, and (2) Plaintiffs' Application does not show that Defendants' current iteration of the Dragon Box is infringing on their copyrights.  Their only evidence of purported infringement arises from years ago, and all of it pre-dates this lawsuit.  Plaintiffs' proffered evidence demonstrates that Dragon Box ceased selling products upon service in with this suit and has sought an indisputably-licensed service to replace the one Plaintiffs took issue with.  Plaintiffs have made no showing that the current service—"My TV"—is infringing on their works.  Accordingly, if the Court considers the Application, it should deny it in its

entirety.

Finally, Plaintiffs' memorandum conceded that Defendant Williams is not a part of "My TV", and, thus, no relief should be issued as against him.

I.   **THE COURT SHOULD EXTEND THE DATE BY WHICH DEFENDANTS CAN FILE AN OPPOSITION BECAUSE THE PLAINTIFFS' APPLICATION DOES NOT SHOW FACTS SUFFICIENT TO REQUIRE THE PREPARATION OF A FULL SUBSTANTIVE OPPOSITION ON ONE DAY OF NOTICE.**

The Court should extend the date by which Defendants must file an opposition to Plaintiffs' Application because Plaintiffs have not shown an emergency exists justifying the tremendous burden placed by a T.R.O.   This matter has been pending since 1 January 2018, and it was not until 20 December 2018 that Plaintiffs sought this leave.  In the course of that year, Plaintiffs have taken their time in preparing a nearly 150-page motion for preliminary injunction that includes multiple declarations, including an expert declaration, and dozens of exhibits.

Yet, rather than file their motion as a preliminary injunction, Plaintiffs filed it as an ex parte application for a temporary restraining order.  The import of this is clear: while a noticed motion for preliminary injunction would include a reasonable time for Defendants to prepare an opposition and a hearing for the matters to be heard, an ex parte application denies them of this.  Essentially, Plaintiffs seek to take advantage of a chambers rule which

requires ex parte oppositions to be filed within 24 hours of the moving papers. Moreover, rather than comply with the applicable chambers rule and Local Rule 7-19, which not only required Plaintiffs' counsel to meet and confer with Defendants' counsel, but also identify this information to the Court, Plaintiffs simply disregarded them. Plaintiffs filed the instant Application just after 5:00 p.m. on 20 December, knowing that the Christmas holiday was right around the corner. In so doing, they have placed gamesmanship over substance and have sought to impose a tremendous burden on Defendants without justification or need. They have abused the Court's ex parte process in an effort to gain a leg up in settlement discussions.

What's worse, Plaintiffs have refused to answer discovery requests sent by Defendants to ascertain the nature of their claims. In early November, Defendants served discovery requests on Plaintiffs, and Plaintiffs have sought, and received, two extensions to respond to these requests under the guise of "facilitating settlement." These requests sought basic information as to Plaintiffs' claims: How many people, if any, have actually utilized the Dragon Box to view the Plaintiffs' copyrighted works? How have the Plaintiffs been harmed by these undocumented and known viewings? Why do the Plaintiffs believe that the individual defendants are responsible in lieu of the corporate entities? Nobody knows the answers to these questions because Plaintiffs will not answer them. In fact, shortly before filing this Application, Plaintiffs requested another extension

on these discovery requests, making no mention of the fact that the Application itself was to be filed shortly.   These responses are necessary for Defendants to prepare a full opposition to Plaintiffs' Application.

Finally, Plaintiffs' Application is filled with disinformation and untrue statements. These statements cannot be fully contradicted and opposed in a few hours' time. Defendants intend to oppose this Application fully and demonstrate to the Court that Plaintiffs' allegations are greatly overstated.  But, Defendants cannot do this in one day.

Accordingly, the Court should extend the time by which Defendants may file a full, substantive opposition to this Application.  Given the pending holidays and the enormity of Plaintiffs' Application, Defendants request that such an opposition be extended until 30 January 2019.

## II.   THE COURT SHOULD DENY THE REQUEST FOR THE TEMPORARY RESTRAINING ORDER BECAUSE PLAINTIFFS CANNOT SHOW THAT THEY ARE ENTITLED TO SUCH AN ORDER.

The Court should deny the Application because Plaintiffs' own Application shows that they are not entitled to one.  Plaintiffs' Application is predicated upon an antiquated, inoperative version of the Dragon Box.  The life of the Dragon Box can be divided into three phases:

1.   The pre-filing stage, which Plaintiffs contend to be unlawful and resulted

in this suit;

2.     The post-filing stage, in which the Dragon Box was unable to be purchased online; and

3.     The "My TV" stage, which allows users lawful access to copyrighted works (although the works at issue in the Application appear not to be the works at issue in the Complaint).

Plaintiffs' Application failed to show that they are entitled to relief in the third stage.   First, there is no emergency warranting the imposition of a T.R.O.   Second, Plaintiffs cannot show that Defendants are themselves engaging in, or inducing others to engage in, the infringement of copyrighted works.

### 1.     *Plaintiffs Have Not Demonstrated a Need for Emergent Relief.*

As outlined above, Plaintiffs have improperly filed their motion for preliminary injunction as a temporary restraining order without an emergent need.   A cursory review of their Application shows that Plaintiffs have been advised by Defendants for the entire pendency of the suit that Defendants would be seeking a service for the Dragon Box that was undoubtedly lawful.   Yet, they expressed that they have been "concerned" about this third phase when Dragon Box tried unsuccessfully to utilize the lawful "BlendTV" service in September of 2018.   Despite this, Plaintiffs conceded that

they only knew of this service because Defendants, through counsel, advised them of this service in advance of its release, forwarded them licensing agreements, and sought their input before moving ahead. Plaintiffs' Application reveals—through clever omission—that they did not object to BlendTV at the time. Unfortunately for Defendants, the BlendTV relationship fell apart before it started. Subsequently, Defendants continued to search for a subsequent lawful service. This is "MyTV." Thus, despite being on notice for the entire proceedings of Defendants' plans, and indeed being involved in them, Plaintiffs contend that an emergency has arisen on the last court day before Christmas. Thus, if the Court decides to rule on the Application now, it should reject this argument and deny the Application for failing to demonstrate an emergent need for relief.

>    2.    *Plaintiffs Have Not Demonstrated That the "My TV" Stage Warrants a T.R.O.*

Additionally, the Court should reject the Application because Plaintiffs have failed to show that the "My TV" service warrants a T.R.O. First, Plaintiffs cannot show that Defendants are inducing infringement through the use of the "My TV" service. Second, Plaintiffs have failed to show that the "My TV" service is unlawful. Since these showings are required for the issuance of an injunction, the Court should deny the Application.

7

*Netflix Studios, LLC, et al. v. Dragon Media Inc., et al.*
Defendants' Opposition to Plaintiffs' Application for TRO and/or Request for Extension of Time to Oppose

First, Plaintiffs conclusory state they do not believe the "My TV" service is lawful, but their supporting evidence shows this statement is false.  The basis for this entire allegation—indeed, the entire Application—is found in paragraph 29 of the Declaration of Matthew Fulton [Doc. No. 46-2], in which he avers:

> I investigated whether any Plaintiff or their affiliates had authorized or licensed "Blend TV" to stream the copyrighted works listed in Exhibit A to the Declaration of Michael DeSanctis.  Based on that investigation, no Plaintiff, or affiliate, had done so.

This statement, however, fails to show the need for a T.R.O.  This paragraph only talks about Blend TV, a service that Plaintiffs admit is no longer serviced on Defendants' Dragon Box.  It does not reference "My TV" and thus Plaintiffs' Application does not demonstrate how the current "My TV" service is unlicensed.

Moreover, Mr. Fulton's statement is completely without foundation, relies upon unknown hearsay declarants, and fails to offer any meaningful basis for its analysis.  For instance, where did Mr. Fulton perform his "investigation"?  Did he review licensing databases for each and every company? Which companies did he actually search?  What was the fruits of his labors?  Did he interview any personnel?  Or did he simply type a search into a Google bar: "Is My TV licensed"?  Did he use the right name?  Is My TV a brand name or DBA of an actually licensed provided?  Nobody knows.  Surely, a search of the eight largest entertainment corporations in the world, and all of their affiliates will result in some sort of work product.  Why isn't this

attached or summarized?  Given the fact that this declaration was not personally drafted by Mr. Fulton, he may not even know.  Considering this is the lynchpin for Plaintiffs' Application, one would think that this detail would receive more than a forty word summary.  Accordingly, this overbroad statement is simply without basis and should be rejected by the Court.

Further, the remainder of Mr. Fulton's declaration does not demonstrate how "My TV" facilitates infringement.  While it does provide screenshots of the Dragon Box's original setup, Plaintiffs acknowledged that this setup has been long discontinued.  There are only two paragraphs in Mr. Fulton's declaration that discuss "My TV" and none of them show any illegal conduct.  In these paragraphs, the declaration complains that MPAA "investigators" were able to stream a "recorded" copy of the movie "Logan," but there is no showing as to what "recorded" actually means or why it is illegal.  There is simply no evidence of infringement on the "My TV" service.

Finally, Plaintiffs Application did not show that Defendants are inducing infringement through the use of the "My TV" service.  All of the citations show that "My TV" is a fee-based subscription service that offers lawful services (a point Plaintiffs have not disproven).  There is no reference to "cutting cords" or getting "free" cable in the "My TV" materials.  While Plaintiffs attempted to conflate this time period

with references to the pre-litigation phase of the Dragon Box, none of the "My TV" materials actually showed the inducement of infringement.

Accordingly, for these reasons, Plaintiffs' Application should be denied in its entirety.

## III. THE COURT SHOULD DENY THE APPLICATION AS AGAINST DEFENDANT WILLIAMS BECAUSE PLAINTIFFS CONCEDED THAT HE HAS NO PART IN THE "MY TV HUB" SERVICE.

Finally, the Court should deny the Application as against Defendant Williams. Although the memorandum conceded that no relief is being sought against Mr. Williams [Doc. No. 46, fn 1], this was not made as clear in the proposed order or the Application itself. Accordingly, if the Court is inclined to grant any portion of the Application, it should not grant it as against Mr. Williams.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should DENY the Application.

SHARIF | FAUST LAWYERS, LTD

Dated: December 21, 2018          BY: _____/s/ Matthew J. Faust_____

Matthew J. Faust
Attorneys for Defendants