KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
ELIZABETH A. KIM (State Bar No. 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

MICHAEL B. DESANCTIS (admitted *pro hac vice*)
michael.desanctis@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Netflix Studios, LLC; Amazon Content Services, LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; Universal City Studios Productions LLLP; Warner Bros. Entertainment Inc.<br><br>      Plaintiffs,<br><br>   vs.<br><br>Dragon Media Inc. d/b/a Dragon Box; Paul Christoforo; Jeff Williams.<br><br>      Defendants. | Case No. 2:18-CV-00230-MWF (AS)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION FOR EXTENSION OF TIME TO FILE THE RESPONSE TO THE ORDER TO SHOW CAUSE AS TO WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED**<br><br>Ctrm:  5A (Hon. Michael W. Fitzgerald)<br>Filed concurrently:<br>  Declaration of Michael B. DeSanctis |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court should deny Defendants' *ex parte* application for an extension of time to respond to the Order to Show Cause until a third-party deposition can be taken. Plaintiffs are not opposed to the third-party deposition, *per se*. Plaintiffs are very much opposed, however, to Defendants' continuing to promote, sell, and operate their wholly unlawful service. In an effort to reach a compromise, Plaintiffs offered not to oppose the proposed extension if Defendants agreed to disable their infringing service during the extension period. Defendants' counsel did not believe Defendants would agree, but offered to confirm. Plaintiffs, however, have not heard back from counsel.

Defendants have submitted no documents showing, or even suggesting, that their service is licensed. Nor have they provided any credible argument to support their belief that the proposed third-party deposition will somehow reveal to Dragon Box that, lo and behold, the latest Dragon Box service is licensed. Defendants' narrative simply does not add up. Simply stated, Defendants' service is not licensed.

Plaintiffs submitted their TRO Application ("TRO App.") a week after Defendants started distributing "My TV Hub," the latest in a string of infringing services Defendants have offered customers under the "Dragon Box" label. A day later, the Court concluded that Plaintiffs had "made a strong showing of the factors to justify" immediate injunctive relief and gave Defendants a week to respond to the OSC.

Defendants waited until the eve of the due date for their opposition to ask for a 35-day extension, principally to gather evidence from a third party (Jason DeMeo), who allegedly has "licenses" to stream Plaintiffs' content. Defendants do not explain what these licenses are, why they think they might grant rights to Defendants, or anything else that would justify extending for over a month their

inducement of the mass infringement of Plaintiffs' works. Defendants are free to seek to depose Mr. DeMeo, but they have no right to continue their illegal conduct. If Defendants eventually take the deposition and discovery evidence they believe supports their position, they can move at that time to modify the injunction. The ex parte should be denied.

## II.  ARGUMENT

Each of the three grounds on which Defendants base their application lacks merit.

*First*, Defendants fail to show that the deposition of Mr. DeMeo is relevant to whether Defendants are intentionally inducing the infringement of Plaintiffs' Copyrighted Works through "BlendTV" and "My TV Hub." The record evidence shows that neither service has licenses to stream Plaintiffs' Copyrighted Works. (Dkt. 46-2, ¶ 29; 46-3, ¶ 13.) Defendants have submitted no factual or legal support to rebut Plaintiffs' showing that BlendTV and My TV Hub are infringing services, and that Defendants are inducing the widespread infringement of Plaintiffs' Copyrighted Works by promoting and selling these services.

The only support Defendants offer for the requested extension is that Christoforo claims to "understand" that BlendTV and My TV Hub are licensed through Mr. DeMeo. (Dkt. 49-2, ¶ 3.) This is neither credible nor relevant. Christoforo provides no basis for his claimed understanding. He does not say he has ever seen the licenses nor does he claim that Defendants hold a license themselves either from rightsholders or from Mr. DeMeo. He does not say that he undertook any due diligence to confirm the existence of such licenses before launching Dragon Box with BlendTV, or then My TV Hub, which one would expect. The absence of any such diligence is shocking, given Defendants' admitted statements on Facebook that their original offering for unlimited access to movies and TV shows was

illegal.[1] (Dkt. 46-1, at 19 (Ex. F) (admitting Dragon Box "facilitated" "copyright infringement")).

*Second*, Defendants claim that they need Plaintiffs' responses to Defendants' discovery requests, but fail to identify any specific discovery requests that could possibly be relevant to whether Defendants are intentionally inducing infringement, much less whether Plaintiffs are entitled to injunctive relief.[2] Instead, Defendants state that "the discovery requests seek information and documents relating to Plaintiffs' alleged damages as well as actual infringements by any customers or third parties." (Dkt. 49, at 3.) Discovery relating to damages is not relevant to whether Plaintiffs are entitled to injunctive relief. It is beyond dispute that the widespread inducement of copyright infringement via online streaming causes Plaintiffs irreparable harm. *See, e.g.*, *Disney Enter. v. VidAngel*, 869 F.3d 848, 866 (9th Cir. 2017) ("substantial evidence … that VidAngel's service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill

---

[1] Given their admitted illegal conduct, Defendants' failure to conduct *any* diligence as to the legality of the too-good-to-be-true streaming packages offered by BlendTV and My TV Hub is a classic case of willful blindness. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law … as it is in the law generally."); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (finding as "sufficient evidence of willful infringement" a failure to "attempt to check or inquire into" legality of copyrighted use).

[2] Defendants served voluminous, but nearly identical discovery requests on each Plaintiff. Declaration of Michael B. DeSanctis ("DeSanctis Decl.") ¶ 2. Plaintiffs served their responses and objections on December 27, a date to which Defendants agreed. *Id.* As demonstrated in the exemplar set of requests attached to this opposition, a large portion of Defendants' requests ask Plaintiffs to admit the genuineness of print-outs they generated of devices sold on the Internet that purport to provide free access to televised content. *Id.* Ex. A. Defendants then ask Plaintiffs to admit that Plaintiffs have not sued those infringers. *Id.* Whether other third parties are *also* illegally inducing copyright infringement has no bearing upon the instant case and regardless, would not diminish Defendants' liability for their own infringing conduct.

and negotiating leverage with licensees"). Moreover, Plaintiffs have submitted evidence of actual infringement in support of their TRO application, and the availability of *more* information and documents demonstrating such infringement would certainly not assist Defendants in responding to the Court's OSC. *See* TRO App. at 5-10.

*Third*, and contrary to Defendants' claim, Plaintiffs certainly would suffer prejudice if Defendants are allowed to continue to promote, sell, and operate BlendTV and My TV Hub for over an additional month ignores Plaintiffs' showing of irreparable harm and misstates the sequence of events leading to the application for a TRO.[3] BlendTV launched late this year, and My TV Hub launched just two weeks ago. Both services are inflicting irreparable harm on Plaintiffs. Defendants' promotion and sale of these services not only induce the widespread infringement of Plaintiffs' Copyrighted Works, they damage Plaintiffs' relationships and goodwill with licensees, and undermine the market for legitimate online distribution of content. (Dkt. 46-3, Declaration of David P. Kaplan, ¶¶ 14-31.)

Defendants' application is one in a string of tactical maneuvers to delay the inevitable. Nothing prevented Defendants from noticing Mr. DeMeo's deposition earlier if they believed his testimony was relevant to this litigation.

## III. CONCLUSION

The Court has already granted Defendants until January 4, 2018, to file their response to the OSC. For the reasons set forth above, no further extension is warranted.

---

[3] Plaintiffs filed this lawsuit when Defendants were knowingly inducing the widespread infringement of Plaintiffs' Copyrighted Works by means of illicit addons and a custom version of the Kodi media player. Defendants shut that version of the product down shortly after Plaintiffs filed suit and sought to negotiate with Plaintiffs regarding the parameters of a future, lawful business. Those negotiations continued until Defendants launched two different streaming services that are entirely distinct from Defendants' pre-lawsuit product, but no less infringing.

| | | |
|---|---|---|
| 1 | DATED:  December 28, 2018 | MUNGER, TOLLES & OLSON LLP |

By: _____*/s/ Kelly M. Klaus*_____
     KELLY M. KLAUS
Attorneys for Plaintiffs